### STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

### William H. HALLEY, Respondent.

### SCBD No. 3610.

Supreme Court of Oklahoma.

Oct. 24, 1989.

Thomas C. Riesen, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Gile & Gile by C. Merle Gile and John W. Gile, Oklahoma City, for respondent.

HODGES, Justice.

Respondent lawyer was accused by Complainant of professional misconduct sufficient to warrant disciplinary proceedings.

At the hearing before the Professional Responsibility Tribunal proposed stipulations of fact and conclusions of law were agreed upon between the Complainant and the Respondent and subsequently approved by the three members of the Tribunal. The stipulations are as follows:

### STIPULATIONS OF FACT

1. The Respondent is now, and was at all times hereinafter, an attorney duly licensed to practice law by the Supreme Court of the State of Oklahoma and thereby a member of the Oklahoma Bar Association.

### COUNT I

2. On or about the 1st day of July, 1985, the Respondent formed a partnership with Gerald Shapiro, a licensed Illinois attorney. The name of the partnership was Shapiro and Halley.

3. The purpose of the partnership was to represent mortgage lenders in Oklahoma in connection with real estate foreclosures in Oklahoma. The partnership also handled bankruptcies, evictions, and acted as title agent in proceedings related to these foreclosures.

4. Prior to April, 1986, the partnership also issued title insurance policies as required by clients of the firm. Upon completion of the foreclosure, an owner's title insurance policy was issued to clients of the firm. In order to issue a valid title policy, an abstract was ordered by the partnership from an abstract company licensed by the Department of Insurance of the State of Oklahoma.

5. On or about the 1st day of April, 1986, the Respondent formed a partnership with James Sanders. The name of the partnership was United Title Guaranty, Inc. The purpose of the partnership was to complete title searches in a shorter length of time than that required by abstract companies. Sanders and the Respondent each owned one-half (½) of the United Title partnership.

6. United Title Guaranty, Inc., charged an average of $150.00 for title searches it conducted for the Shapiro/Halley partnership. One half of United Title's fee, after expenses were deducted, was retained by the Respondent. Sanders retained the other half of United Title's fee.

7. The Respondent never advised the Shapiro/Halley clients of his ownership interest in the United Title Guaranty, Inc., partnership. The Respondent transferred his stock in the partnership to Sanders in September, 1986.

### COUNT II

8. On or about the 1st day of September, 1986, through the 22nd day of July, 1988, the Respondent assigned a majority of title work from the Shapiro/Halley partnership to United Title Guaranty, Inc., for Sanders to prepare and complete.

9. The Respondent informed Sanders that $100.00 would be added to United Title's fee for work done, and this $100.00 fee would be charged to the clients of the Shapiro/Halley partnership.

10. Initially, this additional $100.00 fee was added in ink by persons unknown at the Shapiro/Halley partnership, to the billings for work performed on behalf of the clients of the Shapiro/Halley partnership. At a later point in time, and at the insistence of the Respondent and Shapiro, Sanders typed the additional $100.00 fee onto the billings which were in turn passed on to the clients of the Shapiro/Halley partnership. This additional $100.00 amount was collected and retained by the Shapiro/Halley partnership; and not paid back to Sanders, doing business as United Title Guaranty, Inc.

11. In order to complete the services to be performed by United Title Guaranty, Inc., it was necessary for the Respondent to conduct a preliminary title examination prior to commencing a foreclosure action. In return for the service, the partnership retained $100.00 of the fee charged the clients, yet this was charged and collected as an expense incurred by using United Title, and represented to the clients as such.

12. At no time during the existence of this Shapiro/Halley partnership, did the Respondent inform clients of the Shapiro/Halley partnership that an additional $100.00 fee was being added to the billings from United Title, over and above the actual invoice cost.

### STIPULATED CONCLUSIONS OF LAW

The parties would agree and stipulate that the Respondent's conduct is in violation of the mandatory provisions of DR 1-102(A)(4), DR 2-101(A)(1) and DR 5-101(A), Code of Professional Responsibility, 5 O.S. Ch. 1, App. 3 (1981) and Rules 1.7(b), 7.1(a)(1) and 8.4(c), Rules of Professional Conduct, 5 O.S. Ch. 1, App. 3-A (1988).[1] These violations constitute grounds for professional discipline.

### STIPULATIONS OF MITIGATION

1. The Respondent has been a member of the Oklahoma Bar Association since

---

1. During the time period covered by the complaint the Rules of Professional Conduct became effective. Thus, the respondent violated both the Code of Professional Responsibility and the Rules of Professional Conduct. For this reason, the appropriate rule numbers are cited.

1983, and has not been previously disciplined.

2. A service was performed by the Respondent to wit: a preliminary examination for the $100.00 fee charged by United Title even though this $100.00 fee was charged as an expense and not disclosed to the clients.

Having examined the pleadings, the stipulations and the recommended discipline submitted by the Complainant and the Professional Responsibility Tribunal, THE COURT FINDS:

1) On de novo review of the record before the Court, public censure is the appropriate sanction to be imposed for the Respondent's misconduct.

2) The Respondent shall pay costs of the proceedings in this matter in the amount of $270.66.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED BY THIS COURT that the Respondent herein be publicly censured by the Supreme Court of the State of Oklahoma.

RESPONDENT PUBLICLY CENSURED.

All the Justices concur.