1997 OK 55

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Grover L. MISKOVSKY, Respondent.**

SCBD No. 4122.
OBAD No. 1223.

Supreme Court of Oklahoma.

April 29, 1997.

---

Dan Murdock, General Counsel, Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association Oklahoma City, for Complainant.

Paul Streck, Miskovsky, Miskovsky & Associates, Oklahoma City, for Respondent.

HARGRAVE, Justice.

The Respondent was charged with three counts involving violations of the Code of Professional Responsibility. Count I, which resulted from a complaint that Respondent charged a client for an initial consultation that had been advertised as free, was dismissed on motion of the Complainant. Counts II and III involve sexually offensive and harassing conduct on the part of Respondent toward two women who had, on different occasions, sought him out for representation in their divorces.

We have read the transcript of the proceedings and find that the Respondent engaged in a pattern of sexually offensive and harassing behavior. The essential elements of Counts II and III are virtually identical. Each of the women involved had been referred to the Respondent for representation. Within moments of being seated in the office, each woman was questioned by Respondent about her sexual practices, told that it was okay for women to have these feelings and then told what kinds of sexual practices she might enjoy having done to her, using the lowest vernacular terms. Mrs. C., who had married at a young age, testified that Respondent told her at that early age she had gotten her feelings for someone confused with sexual feelings, and that "that's how they start in the back seat of a car." He asked both women if they ever had "wet dreams" or fantasies. He asked Mrs. C. to describe her dreams or fantasies. With both women he mentioned, in his discussion of "feelings," how they could be having sex with him right in the very room in which they were talking. When Ms. C. left the office,

the Respondent hugged her. Neither woman sought to have Mr. Miskovsky represent her after the initial interview. They sought representation elsewhere, with female attorneys. Both women filed grievances with the Oklahoma Bar Association shortly thereafter.

In the initial interview conducted by Respondent, neither woman was questioned about the specifics of her divorce, although an extensive questionnaire had been filled out in the waiting room. Ms. R. had a split lip and bruises given to her by her then-husband. The Respondent did not mention these injuries, did not ask whether they were administered by the husband, although Ms. R had described him as abusive. Respondent did not ask whether any protective order or medical treatment was necessary or advisable. Ms. R. stated that she was very intimidated by the Respondent's behavior, and gave him a check for a retainer fee, but stopped payment on the check the next morning.

The Oklahoma Bar Association filed a complaint against the Respondent alleging three (3) counts of misconduct. Respondent filed an answer denying that his conduct was subject to any form of discipline, and challenged the Bar's jurisdiction. A two-day hearing was held before the Trial Panel of the Professional Responsibility Tribunal at which numerous witnesses testified and Respondent's vigorously defended his position. Near the end of the hearing, when the Complainant was about to introduce the testimony of two final witnesses, Ms. G. and Ms. W., Respondent stipulated to the sexual conduct charges against him.[1]

The Respondent stipulated to the following, in the agreed joint stipulations, proposed findings of fact and conclusions of law submitted to the Trial Panel:

"5. On December 8, 1994, at 8:00 p.m., [Mrs. R] went to Respondent's office for a scheduled appointment. After waiting in the outer office for over an hour she was shown into Respondent's office about 4:00 p.m. The door was closed to the Respondent's office and the interview then began.

1. The Trial Panel allowed Respondent's two attorneys, in the presence of general counsel for the Bar, to interview Ms. G. off the record. After

that interview, the Respondent stipulated to Counts II and III of the Bar Association's complaint.

6. [Mrs. R] had been married for 16 years and had never needed an attorney before. She was there to speak to the Respondent about representing her in a divorce.

7. Respondent then conducted an interview in which he made repeated sexually degrading, sexually suggestive, and sexually harassing comments in general and specifically about [Mrs. R]. The Respondent even made comments about himself and [Mrs. R] having sexual intercourse on a couch in his office. The comments were much more graphic and descriptive than those set out in this (sic) complaint. The Respondent has been provided with the complaint containing the graphic and descriptive comments and phrases and was present when testimony before the trial panel was received on May 13 and May 20, 1996.

8. [Mrs. R] was very intimidated by the sexually harassing behavior of the defendant and upon his request gave him a check that day for a retainer fee but stopped payment on the check the next morning and requested that her check be returned.

9. The conduct of Respondent violated Rules 1.4(b), 1.7(b), 2.1, 8.4(a) and 8.4(d) of the ORPC, and Rule 1.3, RGDP, and constitutes grounds for professional discipline.

10. On July 11, 1995, [Mrs. C.] went to the Respondent's office for a scheduled appointment to discuss a divorce. She arrived at the Respondent's office at 2:50 p.m. and completed some initial paperwork. She was then taken into the Respondent's office, the door was closed, and the interview began.

11. [Mrs. C.] had been married for 18 years and never needed an attorney before.

12. The Respondent then conducted an interview in which he made repeated sexually degrading, sexually suggestive, and sexually harassing comments in general and specifically toward and about [Mrs. C.] The Respondent graphically described a sexual scenario between himself and [Mrs. C] and made repeated comments about her having sex, and also having sex with the Respondent himself. The comments were much more graphic and descriptive than those set out in this (sic) complaint. The Respondent has been provided with the complaint containing the graphic and descriptive comments and phrases and was present when testimony before the trial panel was received on May 13 and May 20, 1996.

13. [Mrs. C.] was extremely upset by the whole interview process and found other legal representation.

14. The conduct of the Respondent violated Rules 1.4(b), 1.7(b), 2.1, 8.4(a) and 8.4(d) of the ORPC, and Rule 1.3, RGDP and constitutes grounds for professional discipline."

The Trial Panel of the Professional Responsibility Tribunal found that Counts II and III, so stipulated, were established by clear and convincing evidence, justifying disciplinary action. The Trial Panel found by clear and convincing evidence that the Respondent engaged in a "sickening pattern of exploitation of the attorney-client setting for personal sexual gratification." The panel noted that conduct of this ilk is particularly repugnant where the client is dependent upon an attorney for guidance and assistance, stating that: "[i]t is more so disgusting and abominable when the pattern is one of preying upon emotionally vulnerable clients in context of a divorce consultation." The Trial Panel recommended that the Respondent be suspended for two (2) years and one (1) day. Having reviewed the record in the case, we agree with the Trial Panel that suspension is appropriate discipline for Respondent's admitted pattern of conduct. For reasons discussed below, we impose a suspension of sixty (60) days.

The circumstances leading up to Respondent's stipulations are revealing. The Bar had listed Ms. G. as a witness. Respondent's attorneys and attorneys for the Bar met with Ms. G. outside the hearing so that Respondent's attorneys might discover the nature of her testimony. The substance of Ms. G's proposed testimony was revealed to the Trial Panel by Respondent's attorneys *in camera* when they argued that she should be excluded from testifying. The proposed testimony

apparently involved more severe allegations than those listed in the Bar's complaint. After an off-the-record discussion, the Trial Panel ruled that the proposed testimony would be allowed on rebuttal. This is the point at which Respondent stipulated to Counts II and III of the complaint.

Further discussion was held about admitting the testimony of Ms. G. for other purposes. In objecting, Respondent's attorney argued that because the Respondent had stipulated to the two counts, there would be no purpose in admitting the further testimony except to enhance the punishment. Again the Trial Panel went off-the-record, and after a bench conference with the attorneys, the Presiding Master said:

> "This is a problem. Since we went in camera, we already know some about what the one lady is going to say. Okay? So as far as what you are talking about, enhancement of punishment, that doesn't even come into the picture. Because the cat is already out of the bag on that."

Ultimately, Ms. G. did not testify and the cause was presented based upon the stipulations and the previously completed testimony.

The Trial Panel was privy to these matters occurring outside the record on appeal, and may have considered these matters in recommending a more severe discipline. We are bound by the record presented, and what Ms. G may or may not have testified to is not before us as there is no testimony by Ms. G. in the record. We may not speculate or engage in what would be mere conjecture. We base our recommendation of discipline based upon the stipulated counts and the testimony taken in connection with those counts. Accordingly, our recommended discipline is suspension from the practice of law for sixty (60) days.

■ This Court's review of the proceedings below is *de novo*. *State ex rel. Oklahoma Bar Association v. Hogue*, 898 P.2d 153 (Okla.1995). Our responsibility, whenever we are called upon to function in our constitutional capacity as the state's exclusive licensing authority for legal practitioners, is to independently redetermine all facts responsive to issues formed before the trial panel. *State ex rel. Oklahoma Bar Association v. Cantrell*, 734 P.2d 1292 (Okla.1987).

What is before us, in imposing discipline in this matter, is Respondent's admission that he engaged in sexually harassing conduct toward women who sought him out in his professional capacity to represent them in a legal matter. The Respondent used their misfortunes for his personal gratification. The Respondent's *stipulated conduct* indicates a flagrant disregard of the best interests of the client for his own needs.

Notwithstanding having stipulated to the conduct complained of, the Respondent continues to defend himself against the very charges to which he has stipulated. In his brief before this Court on the discipline to be imposed, Respondent persists in his assertions that he has not violated any rules of professional conduct. He seeks to persuade this Court that the appropriate discipline would be a public reprimand. Respondent urges that a public reprimand is appropriate, not because he believes that he has learned his lesson and will not engage in such conduct again, *but because he believes that his conduct was less serious than the conduct in two other sexual conduct matters in which public reprimands were given*. Respondent continues to reargue the merits of the charges against him, suggesting that because no offensive touching occurred and because he never suggested sex in exchange for his professional services, that the complaints simply boil down to one issue: "the choice of words, allegedly used by the Respondent in discussing moral, philosophical and legal concepts with these two potential clients." He states that if his language was as offensive as alleged, "why didn't they leave." These, and many other examples are used by the Respondent in claiming that he has not violated the Rules of Professional Conduct. Clearly, the Respondent still believes that he has done nothing wrong. Respondent argues that the language "allegedly" used by him, when taken out of context "may be shocking", but that it does not constitute sexual harassment as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The only issue before us, however, is

the discipline to be imposed based upon the Respondent's stipulated conduct.

Respondent refers to two previous cases in which we were called upon to impose discipline in sexual conduct matters where the conduct had been stipulated to by the respondents. In *State ex rel. Oklahoma Bar Association v. Sopher*, 852 P.2d 707 (Okla. 1993) a public reprimand was administered to an attorney who had been charged with unprofessional conduct after he looked down the blouses of a mother and her daughter who had sought him for representation, and made jocular comments about it. The daughter previously had worked for the attorney as a legal secretary. There, the parties agreed that the Respondent had violated the mandatory provisions of Rule 8.4(d), Oklahoma Rules of Professional Conduct, 5 O.S. 1991, Ch. 1, App. 3–A, which provides that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. *Sopher* cited *In the Matter of Darrell Adams*, 428 N.E.2d 786, 787 (Ind.1981):

> " . . . It should be obvious that Respondent sought to exploit the attorney-client relationship for his personal physical pleasure. Conduct of this ilk is particularly repugnant when the client is dependent upon the attorney for guidance and assistance."

We faced another sexual advances matter in *Oklahoma Bar Association v. Copeland*, 870 P.2d 776 (Okla.1994). Disciplinary proceedings were instituted against Copeland for taking advantage of the attorney-client relationship by offensively touching a client who was seeking advice concerning a possible sexual harassment suit against her employer and co-workers. It was stipulated that Respondent approached the client from behind and purposefully touched her breast. Stipu-

lations of facts and law, as well as discipline to be imposed, were agreed to in the case. The trial panel approved of the agreed discipline in the form of a private reprimand. On *de novo* review, we publicly reprimanded the attorney. Copeland was admonished that such behavior was unprofessional conduct not condoned by this Court.

The Trial Panel in the case at bar recognized that the sanction imposed in both *Sopher* and *Copeland* was public reprimand, but felt that neither of those cases presented facts approaching the egregiousness of the Respondent's conduct in this case. The Trial Panel felt that the Respondent "has engaged in a predatory pattern of personal sexual gratification at the expense of emotionally distraught prospective divorce clients." Consequently, the Trial Panel felt that the repeated conduct of Respondent to those prospective clients who filed complaints with the Oklahoma Bar Association distinguished itself from the isolated incidents in *Sopher* and *Copeland*.

We agree with the Trial Panel that the conduct to which Mr. Miskovsky has stipulated, in contrast to the isolated instances involved in *Sopher* and *Copeland*, reveals a pattern of behavior and a course of conduct on the part of this Respondent that requires imposition of more severe discipline. We, too, find Respondent's conduct reprehensible, and indicative of a pattern of conduct that will not be condoned by this Court nor by the Bar in general. Respondent's own actions reflect the nature of his character; our words of opprobrium are merely surplusage. The Respondent has stipulated that his conduct violated Rules 1.4(b), 1.7(b), 2.1, 8.4(a) and 8.4(d) of the Oklahoma Rules of Professional Conduct, and Rule 1.3 of the Rules Governing Disciplinary Proceedings.[2]

**2.** Rules 1.4(b) and 1.7(b) deal with the client-lawyer relationship.

Rule 1.4(b) provides that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation. Rule 1.7(b) provides that a lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests unless the lawyer reasonably believes the representation will not be ad-

versely affected and the client consents after consultation.

Rule 2.1 deals with the attorney as counselor.

Rule 2.1 states that, in representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

Rule 8.4(a) and 8.4(d) are concerned with maintaining the integrity of the legal profession.

This Court's duty, in imposing discipline, is to maintain strict integrity among the members of the Oklahoma bar. *State ex rel. Oklahoma Bar Association v. Raskin,* 642 P.2d 262 (Okla.1982). As an officer of the court, an attorney is bound by the highest possible standards, and as such carries the burden of avoiding the appearance of evil; he must conduct himself in such a way as to maintain integrity of the profession. *Northeastern Oklahoma Community Dev. Corp. v. Adams,* 510 P.2d 939 (Okla.1973). The proper administration of justice requires that attorneys should be fair and honorable with opposing counsel, the court and their clients. *Caples v. State,* 3 Okla.Cr. 72, 104 P. 493 (Okla.Cr.1909). The ultimate purpose in disciplining attorneys is not punishment, but purification of the bar and protection of courts and the public generally. *State ex rel. Oklahoma Bar Association v. Booth,* 441 P.2d 405 (Okla.1966). We have said that a license to practice law is not for the benefit of the individual members of the profession, but rather for the benefit of the public. *Northeastern Okla. Community Dev. Corp. v. Adams,* 510 P.2d 939, 942 (Okla.1973). The discipline to be imposed in each instance of professional misconduct, while designed for the protection of the public and not as punishment to the attorney, must nevertheless be tailored to the circumstances of the particular case. That is, considering all the circumstances of the case, the discipline must be sufficient to get the attention of the attorney and persuade him or her that such conduct cannot and will not be tolerated. In this instance, the Bar and the Trial Panel, after hearing all the testimony, and observing the demeanor of the witnesses and the respondent, recommended discipline of suspension for two years and one day. We are required to review the record independently, and considering all circumstances, decide on imposition of final discipline in the matter. Our review of the entire proceedings in the case at bar, convinces us that some period of suspension is needed in this matter to get the Respondent's attention and indicate to him the seriousness of the conduct for which he is being disciplined.

At the hearing, Mr. Miskovsky tendered an apology on the record for his behavior. He stated, before the Trial Panel:

"My position is that the language that I used in demonstrating or otherwise trying to get a concept across to these young ladies offended them. And for that, I regret it, seriously apologize to them, because I had no—I have become so—so accustomed to using profanity and to—talking in what is known as 'vulgae' (sic) or vulgar terms, that I became, I believe, desensitized to the effect of these words on individuals.

And that those words that were used in the—notwithstanding the circumstances that happened, that those things, people that come into your being, come around you, they don't perceive them the same way that you perceive them. You can't count on it.

Therefore, I sincerely apologize to the Bar, and I publicly apologize to them individually because I certainly had no intention of damaging or hurting them. What I had an intention of doing is trying to get a point across, but I did it in a way that I offended them and for that, I regret it."

In his brief Respondent states that he has modified his format to a more politically correct, sanitized and "gender sensitive" version of his former style when interviewing prospective clients or speaking with existing clients. The tenor of Respondent's arguments is that he has grudgingly modified his behavior due to people becoming offended by

Rule 8.4(a) makes it professional misconduct for a lawyer to violate or attempt to violate the Rule of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another. Rule 8.4(d) makes it professional misconduct to engage in conduct that is prejudicial to the administration of justice.

Rule 1.3, Rules Governing Disciplinary Proceedings, provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

his actions. Respondent says that he never intended to damage or hurt anyone, and he apologizes for any offense caused; he does not admit that his actions were improper under the circumstances.

Respondent initially sought to avoid imposition of any discipline by arguing that the women who filed complaints against him were not "clients" because they did not hire him. Respondent continues to so argue in his brief before this Court. This argument, in addition to being repugnant, is moot because the Respondent has stipulated to violations of the Code of Professional Responsibility and the Rules of Disciplinary Procedure. The two complaining witnesses in the case at bar had been referred to Respondent and came to him seeking advice and representation. What they got was a far cry from what they expected and from what is expected of an attorney. What they got was an attorney who has admitted regularly using vulgar and inappropriate language.

What permeates the record in this matter is a complete lack of Respondent's accepting any responsibility for his actions. Even after stipulating to the sexually harassing conduct complained of, Respondent *continues to maintain that he has done nothing wrong.* Respondent objected to imposition of costs in the matter because, among other things: "Respondent denies that he violated any provisions of the Rule of Professional Conduct or the Rules Governing Disciplinary Proceedings." Respondent went on to state:

> "Respondent asserts, that although he did not believe he was guilty of any of the Rules Violations with which he was charged, as alleged in the Complaint against him by the Complainant, he was willing to stipulate to a charge of 'professional misconduct', under the guidelines of *Sopher* and *Copeland*, even though there was no offensive touching."

Even more revealing is Respondent's assertion that the only reason a trial was held was because the Bar wanted to publicly humiliate him. He states:

> "That Complainant's sole purpose for holding the Trial was to publicly humiliate, embarrass and confound the Respondent in his practice of law. This is evidenced by

the Video Tape which has recently been submitted to the Supreme Court of a News Broadcast, on Channel 4, as an Exhibit. This video tape serves no purpose, was never made a part of the record, and is being submitted by the Complainant to prejudice and influence this Court against the Respondent."

The Respondent's own actions clearly indicate that he still does not believe that he has done anything wrong. He still does not believe that he violated any disciplinary rules or rules of professional conduct, *even though he stipulated that he did.* He admits that he has used profane and vulgar language so much that he has become desensitized to the effect of the language he uses. He believes that the trial was conducted only because the Bar wanted to publicly humiliate him. He aggressively defended himself until faced with testimony of Ms. G, at which point, after two-days of hearings, he stipulated to the counts against him. Respondent's attorney stated that the reason for the stipulation was to avoid Ms. G's testimony.

■ Respondent's brief concludes: "While use of 'graphic language' might be considered an indication of poor taste on the part of the Respondent to use such language in the presence of persons who might be offended by it; to date, there is no rule prohibiting the use of certain words, either publicly or within the privacy of one's own office." Respondent still views his actions only as "bad words." Respondent apparently does not recognize that his own inappropriate conduct had anything to do with the charges brought against him. In short, Respondent does not accept responsibility for his actions and does not see the error of his ways. We cannot believe that a public reprimand would have any effect on this Respondent. We are constrained to impose a period of suspension in order to protect the public from Respondent's behavior, which falls below the standards of a professional licensed by this Court to practice law. Such inappropriate, sexually-harassing conduct is unprofessional conduct that will not be tolerated by this Court. Accordingly we impose a suspension of sixty (60) days from the effective date of this opinion.

The Oklahoma Bar Association has filed an application for assessment of costs in this matter, in the amount of $3,367.09. As noted above, Respondent filed objection to the imposition of costs, arguing that Complainant is not entitled to reimbursement for expenses in this case. He lists numerous reasons why the Bar should not recover costs in this matter, in addition to those reasons listed above. Respondent asks that Complainant's application to assess costs be dismissed. Respondent's request is denied. Respondent, after two days of hearings, stipulated to two counts in the original complaint filed against him. The expenses were legitimately incurred in prosecuting this matter. We have not viewed the videotape referred to in paragraph (g) of Respondent's objection to costs; it was not part of the record below. The Complainant's application reflects $52.97 spent in connection with the videotape referred to. That cost is disallowed; the Complainant is entitled to recover costs in the amount of $3,314.12. We order that the Respondent bear the costs of this proceeding in the amount of $3,314.12, and order that the same be paid no later than sixty (60) days from the effective date of this opinion.

**DISCIPLINE IMPOSED; RESPONDENT SUSPENDED FOR SIXTY (60) DAYS; RESPONDENT ORDERED TO PAY COSTS.**

SUMMERS, V.C.J., and LAVENDER, OPALA (by separate writing) and WATT, JJ., concur.

SIMMS (joins ALMA WILSON, J.) and ALMA WILSON (I would adopt the Recommendation of the Professional Responsibility Tribunal, and suspend for two years and one day), JJ., concur in part; dissent in part.

HODGES (by separate writing), J., dissents.

KAUGER, C.J., not participating.

OPALA, Justice, concurring.

I concur in the court's pronouncement, reached on *de novo* review of the record, that respondent engaged in a "predatory pattern" of *unprofessional behavior* designed to achieve sexual gratification from conducting *intrusive and abusive* interviews with emotionally distraught women, his prospective clients, each of whom consulted him while on the verge of bringing a divorce action; I also concur in the length of suspension meted out by today's opinion.

Unlike the dissenting justice, I find it unnecessary to direct that this cause be returned to the Bar for a rehearing before another panel. *Neither* party regards the record before us as *incomplete.* In his quest for corrective relief, respondent does *not* ask for a full-scale rehearing before another complement of triers. His brief seeks *neither* to fill the gap left by off-the-record discussions *nor* to protect the disciplinary process from a perceived harm occasioned by extra-record disclosures to the sitting panel.

Because the record affords ample insight into respondent's offenses, and neither party desires this disciplinary proceeding's return to the Professional Responsibility Tribunal, I am satisfied that today's disposition *sans rehearing* before another panel offends neither due process nor any other standard of fairness. cf. *State ex rel. Oklahoma Bar Association v. Denton,* Okl., 598 P.2d 663, 665–667 (Opala, J., dissenting) (1979); *State ex rel. Oklahoma Bar Association v. Lloyd,* Okl., 787 P.2d 855, 856 (1990).

HODGES, Justice, dissenting.

As pointed out in the majority opinion it appears the Trial Panel was privy to the contents and nature of adverse testimony outside the record. In my opinion this taints the Trial Panel's Proceeding.

Therefore, I would reverse the discipline imposed by the Trial Panel for suspension from the practice of law for two (2) years and one (1) day.

The cause then should be remanded to the Chief Master of the Professional Responsibility Tribunal with directions to select a new Trial Panel to conduct a de novo proceeding.