1998 OK 29

1988 OK 29

**STATE of Oklahoma ex. rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

**v.**

**Phillip M. ANDRE, Respondent.**

**Nos. OBAD 1236, SCBD 4142.**

Supreme Court of Oklahoma.

April 14, 1998.

As Modified on Denial of Rehearing June 1, 1998.

Janis D. Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Phillip Andre, pro se, Oklahoma City, for Respondent.

OPALA, Justice.

## I.

### FACTS

¶ 1  In a January 26, 1996 complaint Phillip M. Andre of Oklahoma City was charged with one count of misconduct alleging numerous disciplinary violations.  The alleged misconduct under review occurred during Andre's representation of his wife in a post-divorce dispute over the visitation and custody rights of his step-daughter's biological father.

¶ 2  The biological father moved to modify custody after molestation charges were brought against him.  In the post-divorce proceedings Andre represented his wife after four other attorneys had withdrawn for various reasons.  He undertook to represent her because of financial constraints and his own unwillingness to continue access by visitation while searching for another attorney.  The custody case was emotionally charged because it involved the father's alleged molestation.

¶ 3  During the course of that representation, Ms. Kimberly Seng supervised the minor child's visitation with the biological father.  Andre's conduct toward Ms. Seng was rude and manipulative.  During the hearing the court admonished him for improper cross-examination of Ms. Seng. Later Andre, his wife and Ms. Seng were on an elevator where a verbal exchange took place between Ms. Seng and Andre's wife.  Following Ms. Seng's testimony that was not favorable to Andre's interest, Andre and his wife made multiple contacts with Ms. Seng's employer and with several other employees of her employer to complain both about Ms. Seng's supervision and her testimony.  During those contacts, Andre expressed a desire to have Ms. Seng fired.[1]

---

1.  Ms. Seng's employment bore no connection to   the subject matter of the proceedings in which

¶ 4 In respondent's answer to the complaint, he stated that he did not harass Ms. Seng in regard to her job. Even after Andre was directed by the Bar's General Counsel to stop contacting Ms. Seng's place of employment and was offered a private reprimand, his improper actions continued. A hearing before the Professional Responsibility Tribunal's trial panel was held on August 19, 1996. Respondent came late to the hearing and did not deliver certain pages that he had removed from a transcript.

¶ 5 The trial panel found by clear and convincing evidence that (a) respondent's conduct violated Rules 1.7(b),[2] 4.4,[3] 8.4(c), and 8.4(d)[4] of the Oklahoma Rules of Professional Conduct (ORPC) and Rules 1.3[5] and 5.2[6] of the Rules Governing Disciplinary Proceedings (RGDP) and (b) respondent does not believe that he has done anything that offends the Rules and does not accept responsibility for his conduct. The panel recommended that respondent receive a public censure and be ordered to pay the costs of the proceedings.

the respondent acted as counsel.

2. ORPC Rule 1.7(b) states:

A lawyer shall not represent a client if the representation of the client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
(1) the lawyer reasonably believes the representation will not be adversely affected; and
(2) the client consents after consultation....

3. ORPC Rule 4.4 states:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

4. ORPC Rule 8.4(c)–(d) states:

It is professional misconduct for a lawyer to:
...
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice....

5. RGDP Rule 1.3 states:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal

## II.

## VIOLATIONS OF THE RULES OF PROFESSIONAL RESPONSIBILITY

¶ 6 In a bar disciplinary proceeding this court functions in the role of adjudicative licensing authority exercising exclusive original jurisdiction.[7] The ultimate responsibility for imposition of discipline rests alone upon this court. The recommendations of the trial panel are merely advisory. In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct in contest, this court conducts a *de novo* review of the record.[8]

¶ 7 Andre conceded some violations before the hearing.[9] We find *no* evidentiary support for the alleged breach of ORPC Rule 1.7(b)[10]—that of representing his wife under circumstances in which he was unduly trammeled by a conflict of interest.

¶ 8 An attorney must be able to advocate his client's cause untrammeled by a

profession, shall be grounds for disciplinary action....

6. RGDP Rule 5.2 states:

After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall ... (2) file and serve a copy of the grievance ... upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct.... Deliberate misrepresentation in such response shall itself be grounds for discipline....

7. *See Oklahoma Bar Assn. v. Lloyd,* 1990 OK 14, 787 P.2d 855, 858; *Oklahoma Bar Assn. v. Stubblefield,* 1988 OK 141, 766 P.2d 979, 982.

8. *Id.*

9. Although the agreed findings include Andre's confession of violating Rule 1.7(b) by representing his wife, we find the admission unsupported by the proof and hence subject to rejection. One's confession of a disciplinary violation must be predicated on facts showing the respondent's culpability. *See* in this connection *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969); *McCarthy v. United States,* 394 U.S. 459, 466–67, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969).

10. *See supra* note 2.

conflicting loyalty to another. As long as a legal practitioner may act free from a bond of loyalty to another, the Bar cannot restrict one's choice of clients. Conflict rules are designed to protect a client from a lawyer unable to undertake effective advocacy because of loyalty to some adverse or conflicting interest. No such protection was needed here. The Bar failed to prove any impediment to Andre's aggressive advocacy in the best interest of his client/wife. His own interests in the matter were not shown to have impaired his effective advocacy. If anything, Andre was overzealous in advocating his wife's cause. He must hence be exonerated of violating ORPC Rule 1.7(b).[11]

▬▬▬ ¶ 9 Andre doubtless went beyond the allowable bounds of aggressive advocacy in the course of his wife's representation. Lawyers have an ethical duty to advance the cause of the client. Their equally solemn duty is to comply with the standards of professional conduct.[12] A practitioner's duty to advocate his client's cause is restricted to legitimate, lawful conduct and those devices that are commensurate with the nature of a trial as a tool in search for truth.[13] Harassing a witness because of her adverse testimony clearly falls outside the permissible bounds of aggressive advocacy.

¶ 10 Andre's conduct was abusive of and intrusive into Ms. Seng's life. He and his wife verbally attacked Ms. Seng for her stance adverse to their interests. Ms. Seng's employment was not at all interconnected with her testimony in the custody hearing. Yet Andre and his wife continuously pressed their complaints to her employer, making Ms. Seng fearful of losing her job.

¶ 11 This is unethical conduct in several respects. *First*, Andre's actions toward Ms. Seng had no legitimate objective; their only purpose was to embarrass or burden her.

*Second*, his conduct was prejudicial to the administration of judicial process in that he was retaliating against her for giving testimony adverse to his cause. *Finally*, his actions can reasonably be termed as bringing discredit upon the legal profession.

¶ 12 Harassing Ms. Seng is conduct which cannot be condoned. RGDP Rule 1.3 and ORPC Rules 4.4 and 8.4[14] command lawyers to engage in behavior that helps maintain the reputable status of the legal profession. Andre failed to act in a manner conducive to that goal. His conduct mandates the imposition of discipline.

¶ 13 Andre also violated the standards for professional conduct when he misrepresented the facts in his answer to the complaint by denying his harassment of Ms. Seng through her employer. Rule 5.2 of the RGDP makes such conduct subject to discipline.[15] In a disciplinary proceeding a lawyer is expected to give a fair and full disclosure of the circumstances leading up to a grievance. Andre utterly failed to do so.

¶ 14 Andre's conduct after the filing of the grievance shows that he refuses to assume responsibility for his offending actions. He misrepresented the facts in his answer; he showed up late for the hearing before the trial panel; and he failed to deliver a complete transcript needed as an exhibit for that hearing. Even after the trial panel gave Andre more time to advance his defense by allowing him to file a brief, Andre neglected to avail himself of the afforded opportunity.

▬▬▬ ¶ 15 Punishment is not the primary purpose of a disciplinary proceeding. The objective here is purification of the legal profession and protection of the courts and the public against substandard practitioners.

**11.** A lawyer can serve but one master. There was here neither proof of any constraint on Andre's representation of his client with unswerving loyalty, nor any showing that he was serving interests contrary to hers. *See Oklahoma Bar Association v. McNaughton*, 1986 OK 25, 719 P.2d 1279, 1281.

**12.** *See Nix v. Whiteside*, 475 U.S. 157, 168, 106 S.Ct. 988, 995, 89 L.Ed.2d 123 (1986).

**13.** *See Nix, supra* note 11, 475 U.S. at 166, 106 S.Ct. at 994.

**14.** *See supra* notes 3–5.

**15.** *See supra* note 6.

Discipline also is designed to deter future misconduct.[16]

¶16 Andre's acts warrant discipline not for punishment's sake, but in the interest of restoring integrity to the legal profession and to deter him and others from engaging in similar acts of grave misconduct. Because respondent has shown no inclination to assume responsibility for his admitted wrongful conduct toward both Ms. Seng and the trial panel, public censure would be too mild a sanction. A period of suspension would best protect the courts and the public from respondent's offending behavior.[17]

## III.

### SUMMARY

¶17 Upon *de novo* review, this court finds that for lack of evidentiary support the first part of count one—which refers to conflict of interest—does not warrant discipline. As for the latter parts of count one—which refer to respondent's dealings with a third person and to his misrepresentations in the response to the Bar grievance—respondent's conduct warrants the imposition of a 60-day suspension and an order for payment of costs in the total sum of $913.39.

KAUGER, C.J., and LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., concur.

SUMMERS, V.C.J., and HODGES, ALMA WILSON and WATT, JJ., concur in part and dissent in part.

HODGES, Justice, with whom SUMMERS, Vice Chief Justice, and ALMA WILSON and WATT, Justices, join, concurring in part and dissenting in part.

I would adopt the recommendation of the trial panel that the respondent be given a public reprimand.

---

**16.** *See Oklahoma Bar Assn. v. Denton*, 1979 OK 116, 598 P.2d 663, 665.

**17.** *See Oklahoma Bar Assn. v. Miskovsky*, 1997 OK 55, 938 P.2d 744, 751.