2003 OK 15

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Donna Dee McLAIN, Respondent.**

No. 4583.

Supreme Court of Oklahoma.

Feb. 18, 2003.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Charles F. Alden, III, Ronald R. Hudson, Oklahoma City, for Respondent.

KAUGER, J.

¶1 The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Donna Dee McLain, with one count of professional misconduct arising from

the drafting and execution of a codicil for the decedent, Corrine Childs Dennis (Childs/decedent), which left property to the respondent's relatives. The Bar Association alleged that the respondent's actions involved dishonesty, fraud, deceit or misrepresentation.[1] The respondent conceded that, although she considered Childs a surrogate mother or aunt and a mentor, no genetic relationship existed between the two. Therefore, she stipulated to a violation of Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A.[2]

¶ 2 Upon a *de novo* review,[3] we hold that: 1) clear and convincing evidence[4] supports the finding of a technical violation of Rule 1.8(c), Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3–A;[5] and 2) insufficient evidence exists to support charges of conduct involving dishonesty, fraud, deceit or misrepresentation.[6] The unprofessional conduct to which the respondent admits is not to be lightly disregarded. Nevertheless, absent a showing of fraud and considering her lack of a prior disciplinary history, we determine that the respondent should be suspended for six months and pay costs of $3,456.33.[7]

## FACTS

¶ 3 The disciplinary proceeding arises out of a friendship between the respondent and Childs. The two were not related by blood. Nevertheless, Childs had been like a relative to the respondent and her family and, as a long-time Tulsa attorney, served as the respondent's role model and mentor. Childs'

followed the respondent's legal career, often giving her advise and counsel. Leona McLain (McLain), the respondent's mother, worked for Childs for nearly forty years having held a power of attorney over the decedent's property since 1989.

¶ 4 Sometime in 1998, Childs mentioned to the respondent that she was considering replacing her will drawn and executed in 1986. Initially, Childs did not ask the respondent to draft a new will. However, during the fall or winter of the same year, Childs requested that the respondent prepare a codicil to the 1986 writing. Under the original will, McLain was to receive $10,000.00. Pursuant to the codicil, McLain was given additional property. Further, three bronzes, originally bequeathed to Gilcrease Museum, were left to the respondent's sister, Linda McLain. The gifts to the respondent's family members under the codicil totaled approximately $350,000.00. The codicil contained other gifts to three of Childs' employees, none of which were related to the respondent: $10,000.00 to Madelon P. Hollie; $10,000.00 to Betty J. Reynolds; and $1,000.00 to Mercedes Simmons.

¶ 5 Early in 1999, Childs became extremely ill with colon cancer. Initially, she was hospitalized. Later, she asked to go home to spend her last few days. The respondent did not draft the requested codicil until after Childs was at home and under the care of a hospice nurse who was administering several drugs, one of which was morphine, to the

1. Rule 8.4, Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3–A provides in pertinent part:
   "It is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation...."

2. Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A provides:
   "A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."

3. *State ex rel. Oklahoma Bar Ass'n v. Phillips,* 2002 OK 86, ¶2, 60 P.3d 1030; *State ex rel. Oklahoma Bar Ass'n v. Erickson,* 2001 OK 66, ¶14, 29 P.3d 550; *State ex rel. Oklahoma Bar Ass'n v. Israel,* 2001 OK 42, ¶13, 25 P.3d 909;

*State ex rel. Oklahoma Bar Ass'n v. Smolen,* 2000 OK 95, ¶7, 17 P.3d 456.

4. Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A; *State ex rel. Oklahoma Bar Ass'n v. Phillips,* see note 3 at ¶15, supra; *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 1997 OK 47, ¶1, 937 P.2d 988; *State ex rel. Oklahoma Bar Ass'n v. Holden,* 1995 OK 25, ¶1, 895 P.2d 707.

5. Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, see note 2, supra.

6. Rule 8.4, Rules of Professional Conduct, 5 O.S. 2001, Ch. 1, App. 3–A, see note 1, supra.

7. Rules 6.16, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

decedent to keep her comfortable. Childs signed the codicil the day before her death on February 12, 1999. At the time, the decedent was bedridden, extremely weak, had to be aroused into wakefulness and required assistance to place an "X" on the codicil.

¶ 6 Childs' two sisters traveled from Texas to attend the decedent's funeral. Although they questioned the respondent's mother about the terms and conditions of their sister's will, McLain told them the will had not been located. The respondent testified that she did not tell the sisters about the codicil because of their attitude towards the decedent, essentially that their primary concern was how much they were going to get from the estate.

¶ 7 McLain, as executor under the codicil, filed probate proceedings. In March of 1999, Childs' sisters and other beneficiaries under the 1986 will contested the codicil's terms. By an agreement signed on April 6, 1999, McLain's petition to enter the codicil to probate was dismissed and proceedings were instituted to disburse the estate under the terms of the 1986 will.

¶ 8 On January 7, 2000, the Bar Association received a complaint against the respondent dealing with the circumstances surrounding the drafting and execution of Childs' codicil. The complaint was not filed by Childs' beneficiaries. Rather, it was forwarded by the attorney handling the will contest on a contingency fee basis. The Bar Association filed this cause as a Rule 6[8] proceeding on December 5, 2000. A hearing was conducted before the trial panel on March 20–21, 2002. A divided panel filed its report on June 4, 2002, finding clear and convincing evidence that the respondent engaged in dishonesty, fraud, deceit or misrepresentation and recommended a one year suspension and the payment of costs. Unconvinced that the evidence was sufficient to show dishonest or fraudulent conduct, the presiding master recommended a six month suspension and the imposition of costs. The Bar Association seeks a suspension of two years and one day plus recompense for costs of the investigation. The Court ordered briefing cycle was completed on August 12, 2002. Although the respondent has asked that only a private reprimand be imposed, she has not opposed the Bar Association's application to assess costs filed on August 29, 2002.

## I.

¶ 9 **CLEAR AND CONVINCING EVIDENCE SUPPORTS THE FINDING OF A TECHNICAL VIOLATION OF RULE 1.8(c), RULES OF PROFESSIONAL CONDUCT, 5 O.S.2001, Ch. 1, App. 3–A.**

¶ 10 Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, provides in clear and mandatory language [9] that:

"A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee."

¶ 11 It is clear from the record, and the respondent concedes, that she violated Rule 1.8(c) when she prepared Childs' codicil which benefitted both her mother and her sister. It is also apparent that the respondent felt as though Childs was a member of her family. Childs had long shown an interest in the respondent and fully supported her decision to become a lawyer, she followed her education and career, shared holidays with her and her family, and had an employer-employee relationship so close with the respondent's mother that McLain had held Childs' power of attorney since 1989. Although all these considerations make it un-

---

**8.** Rule 6, Rules Governing Disciplinary Proceedings, 5 O.S.2001, Ch. 1, App. 1–A.

**9.** The use of "shall" generally signifies a command. *Walker v. Group Health Serv., Inc.,* 2001 OK 2, ¶ 25, 37 P.3d 749; *United States through Farmers Home Admin. v. Hobbs,* 1996 OK 77, ¶ 7, 921 P.2d 338; *State ex rel. Macy v. Freeman,* 1991 OK 59, ¶ 8, 814 P.2d 147. Nevertheless, the term can be permissive. *Walker v. Group Health Serv., Inc.,* this note, supra; *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City,* 1980 OK 169, ¶ 9, 619 P.2d 869.

derstandable that the respondent would want to follow Childs' request and draft the codicil pursuant to the decedent's instructions, we determine that clear and convincing evidence [10] supports the finding of a technical violation of Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A.[11]

## II.

¶ 12 **THERE IS INSUFFICIENT EVIDENCE TO SUPPORT CHARGES OF CONDUCT INVOLVING DISHONESTY, FRAUD, DECEIT OR MISREPRESENTATION.**

■ ¶ 13 The Bar Association contends [12] that the respondent engaged in a dishonest act in drafting the Childs' codicil and then misrepresented or fraudulently induced the decedent to execute the document in violation of Rule 8.4(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A.[13] The respon-

dent argues that the record does not support these contentions. We agree.

¶ 14 Several facts clearly presented by the record foreclose a finding that the respondent acted dishonestly or deceptively in drafting Childs' codicil and presenting it for her signature. First, the complaint was not filed by the beneficiaries of the decedent's original will—Childs' sisters—perhaps because they had no prior expectation of recovering anything from the estate. Billie Childs Gilson testified that she had never discussed with Childs how her estate would be divided.[14] Lucille Childs Roush stated that she wasn't surprised that her sister would make substantial bequests to non-family members.[15]

¶ 15 The complaint was filed by the attorney involved in the will contest—who recovered fees of $113,092.90 plus interest and $342.36 in costs pursuant to a one-third contingent fee contract in a proceeding filed on

---

**10.** Rule 6.12, Rules Governing Disciplinary Proceedings, see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Phillips,* see note 3, supra; *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Holden,* see note 4, supra.

**11.** Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, see note 2, supra.

**12.** The Bar Association also alleged that the respondent should be disciplined for making inadequate or misleading responses to its initial inquiries and to the complaint. At her first deposition, the respondent agreed to provide any additional information the Bar Association might find necessary. No request for additional information was forthcoming. Further, the record does not support the Bar Association's contentions that the respondent's original response and subsequent testimony were inconsistent.

**13.** Rule 8.4(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, see note 1, supra.

**14.** Transcript of proceedings, March 20, 2002, Billie Childs Gibson testifying in pertinent part at p. 291–92:
"... MS. SPARLING: After her second husband died, in your conversations with your sister, did she ever discuss with you what she would like to have done with her estate—
THE WITNESS: No.
MS. SPARLING:—if she pre-ceased you?
THE WITNESS: No, ma'am.

MS. SPARLING: Those kind of conversations—
THE WITNESS: No. Huh-uh.
MS. SPARLING:—just never took place.
THE WITNESS: Huh-uh...."

**15.** Transcript of proceedings, March 20, 2002, Lucille Childs Roush, testifying in pertinent part at p. 303:
"... MR. DONCHIN: When you read the codicil and you saw that your sister was giving money to four different people, Ms. Hollie, Ms. McLain, Ms. Reynolds and Mrs. Simmons, was that consistent with your impression of your sister that she would be a generous person and want to dispose part of her estate and give it to other people outside the family?
THE WITNESS: You want my opinion on that?
MR. DONCHIN: Yes, because they were valued employees?
THE WITNESS: In my opinion, my sister was very careful to find—to follow social protocol. She was very eager to do things right and proper and in her feeling, that was probably what she considered to be the right and proper thing to do.
MR. DONCHIN: Okay. So when you would see, for example, that she might be giving money to the other—to these four people in here, the 10,000, 10,000, 10,000 and 1,000, that wouldn't surprise you and was not inconsistent with your sister because she was that kind of person?
THE WITNESS: That's correct...."

March 5, 1999, and resolved by agreement on April 6, 1999. The complaining attorney participated only in the contest. He did not complete the probate of Childs' estate.[16]

¶ 16 Second, the notary present at the execution signed and sealed the codicil as though it had been property executed.[17] Only when she was called to testify before the trial panel did she indicate a belief that Childs was unaware of what she was signing. Even so, the notary testified that: Childs reached for the pen to sign the codicil;[18] Childs may have known exactly what she was doing when she executed the codicil;[19] and no one pressured her, as notary, to acknowledge the codicil.[20] Further, the record is entirely void of any evidence that Childs' wishes for the disposition of her estate were not represented by the codicil the respondent drafted.

¶ 17 Third, the respondent was not a beneficiary under the codicil. The codicil was withdrawn by agreement of the respondent's mother and sister—the two parties standing to inherit. Although the respondent's mother was certainly someone in whom Childs had complete confidence—having given her a general power of attorney to conduct her

---

**16.** Not before the Court is the issue of whether the fee awarded was reasonable—a condition of representation required by Rule 1.5, Rules Governing Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, outlining some of the factors to be considered in determining reasonableness—one of which is the time and labor expended. The probate judge determined that the fees should be paid by the estate in an order dated October 26, 1999.

**17.** The record supports an inference that the respondent procrastinated to a point that Childs may not have been competent to have executed the codicil and that the dictates of 84 O.S.2001 § 55 were not followed. Title 84 O.S.2001 § 55 provides in pertinent part:

"Every will, other than a nuncupative will, must be in writing; and every will, other than a holographic will and a nuncupative will, must be executed and attested as follows:
1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.
2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.
3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will.
4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence.
5. Every will, other than a holographic and a nuncupative will, and every codicil to such will or to a holographic will may, at the time of execution or at any subsequent date during the lifetimes of the testator and the witnesses, be made self-proved ..."

**18.** Transcript of proceedings, March 20, 2002, Sandra Griffin testifying in pertinent part at:
pp. 231–32 "... Okay. Did you every hear Leona say anything else to Mrs. Childs?
A. Yes. She continued trying to wake her and had her bed raised to where it was probably ... And Mrs. Childs kind of came to and, at that point, was putting her hand out like she was trying to take a pen to sign whatever the document was...."
p. 242 "... Q And when Bob was mentioned, in whatever context it was, Mrs. Childs really came to life; is that right?
A. More so than before, yes.
Q. And she reached out for the pen; is that correct?
A. Correct.
Q. All right. And Leona McLain handed her the pen, correct?
A. Correct...."

**19.** Transcript of proceedings, March 20, 2002, Sandra Griffin testifying in pertinent part at p. 243:
"... Q. It very well might have been that [Childs] knew exactly what she was doing, right?
A. Sure....
Q. Okay. And you're not saying to the Trial Panel today that Leona McLain—strike that. That Corine Childs wasn't in that condition, that she didn't know exactly what she was doing.
A. No...."

**20.** Transcript of proceedings, March 20, 2002, Sandra Griffin testifying in pertinent part at pp. 249–50:
"... MR. DONCHIN: When you signed this document stating that Ms. Childs 'executed the same as her free and voluntary act and deed for the uses and purposes therein set forth', why did you sign that if you didn't think it was truly her free and voluntary act?
THE WITNESS: I honestly don't know.
MR. DONCHIN: Did someone pressure you to do that?
THE WITNESS: No.
MR. DONCHIN: Did you feel like you were under any pressure?
THE WITNESS: No, I didn't feel under pressure...."

business and to dispose of her property in 1989, she voluntarily stepped aside as administrator of Childs' estate and forfeited any inheritance.

¶ 18 However, these actions were not taken at the recommendation of counsel. David Phillips (Phillips) was hired to represent the respondent's mother and sister in the will contest. Phillips testified that, had it been his decision, he would have neither withdrawn from the contest nor dropped the case for the purpose of protecting the respondent's reputation. However, he followed his client's wishes which were based—not on the hope of protecting the respondent—but to keep Child's reputation intact.[21] Phillips indicated that he thought pursuing the contest was reasonable both because he had full confidence in the respondent and the way she handled the practice of law and because it appeared to be a reasonable contest.[22]

¶ 19 The Bar Association failed to establish either that the codicil was not drafted pursuant to the decedent's instructions or that the respondent falsely induced Childs to execute the document. Therefore, we determine that insufficient evidence exists to support charges of conduct involving dishonesty, fraud, deceit or misrepresentation.[23]

## III.

### ¶ 20 THE MISCONDUCT WARRANTS A SIX–MONTH SUSPENSION AND THE IMPOSITION OF COSTS.

■ ¶ 21 A divided panel found clear and convincing evidence that the respondent engaged in dishonesty, fraud, deceit or misrepresentation and recommended a one year suspension and the payment of costs. Unconvinced that the evidence was sufficient to show dishonest or fraudulent conduct, the presiding master recommended a six month suspension and the imposition of costs. The Bar Association seeks a suspension of two years and one day plus recompense for costs of the investigation. Although the respondent agrees that she should be disciplined for the technical violation of Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, she asserts that a suspension is unwarranted. We disagree.

■ ¶ 22 Discipline is administered to preserve public confidence in the bar. Our responsibility is not to punish but to inquire into and gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession. Discipline is imposed to maintain these goals rather than as punish-

---

21. Transcript of proceedings, March 21, 2002, David Phillips testifying in pertinent part at pp. 8–9:

"... Q. All right. Now, as I understand it, the codicil, which is the subject of this proceeding and that will contest, was ultimately withdrawn from probate; is that correct?
A. That's true.
Q. Are you at liberty to tell the Panel how that came about?
A. I can tell them what my client told me to do.
Q. All right. Please do so.
A. After the hearing to appoint the special administrator, it was either that evening or the next morning, very soon after the hearing, Leona called my office and said to—to drop it because she didn't want Mrs. Childs' name drug through the mud.
Q. All right. Was anything said to you by her or anyone else to the effect that this codicil was being withdrawn for the purpose of covering or otherwise protecting Donna McLain?
A. No, sir.
Q. And would it be an accurate statement to say if that were the motivation for this and you knew about it, you wouldn't have done it.

A. No, sir, I would not have withdrawn under those circumstances, but I was prepared to go ahead with the—the case. I was not—I wasn't particularly in agreement with Mrs. McLain on the—the—..."

22. Transcript of proceedings, March 21, 2002, David Phillips testifying in pertinent part at pp. 20–21:

"... Q. Leona McLain then told you she didn't want to go ahead with this. She didn't want to drag Mrs. Childs' name through the mud; it that correct?
A. That's true.
Q. But you wanted to go ahead with it, is that correct.
A. I felt it was a—a reasonable contest.
Q. How did you know that, if you had not talked to any of the witnesses or investigated the circumstances surrounding the presentation of the codicil? How did you know that you should go ahead with it?
A. Well, I had confidence in Donna McLain and how she does things...."

23. Rule 8.4, Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, see note 1, supra.

ment for the lawyer's misconduct.[24] Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts.[25] Discipline is fashioned to coincide with the discipline imposed upon other lawyers for similar acts of professional misconduct.[26] Although this Court strives to be evenhanded and fair in disciplinary matters, discipline must be decided on a case-by-case basis because each situation involves unique transgressions and mitigating factors.[27]

■ ¶ 23 This Court has not had previous occasion to discipline an attorney under facts similar to those presented here. Nevertheless, discipline should be sufficient to persuade the attorney that such conduct will not be tolerated.[28] Mitigating circumstances may be considered in evaluating both the attorney's conduct and in assessing the appropriate discipline.[29]

¶ 24 In mitigation, we may consider that: no grave economic harm occurred to any complaining party—the beneficiaries under the 1986 will did not file the complaint; the respondent has not been previously disciplined; and the respondent admits that she committed a professional transgression in drafting the codicil resulting in gifts to her family members. On the other hand, however the cause is viewed, an injustice has been done. The injustice may be that Childs' wishes were not honored. Because of the respondent's negligence in not timely drafting and having executed the codicil to her mentor's estate, the intended beneficiaries withdrew the codicil and forfeited their rights in an attempt to protect the decedent's reputation. On the other hand, it may be that Childs' sisters—who prevailed in the contest—should have inherited all of the estate valued in excess of $300,000.00. Instead, they forfeited almost a third of the recovered inheritance as attorneys' fees in an agreed withdrawal of the codicil. In any case, the respondent should have recognized the need to bring in independent counsel to draft a codicil which would result in a gift from a non-family member client to her relatives.

■ ¶ 25 Under any scenario, discipline is appropriate because of the respondent's admitted violation of Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A.[30] Nevertheless, this Court is the ultimate arbiter of appropriate sanctions in bar discipline cases.[31] We may choose to reject or to accept the trial panel's recommendations.[32] Under the facts presented, in the absence of a prior disciplinary history and on a record that is devoid of the respondent's having committed a dishonest act, fraud or misrepresentation, we determine that the respondent should be suspended for six months and be required to pay $3, 456.33 in costs.[33]

24. *State ex rel. Oklahoma Bar Ass'n v. Smith,* 1980 OK 126, ¶ 21, 615 P.2d 1014; *State ex rel. Oklahoma Bar Ass'n v. Lowe,* 1982 OK 20, ¶ 19, 640 P.2d 1361.

25. *State ex rel. Oklahoma Bar Ass'n v. Cummings,* 1993 OK 127, ¶ 19, 863 P.2d 1164; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, ¶ 12, 567 P.2d 975.

26. *State ex rel. Oklahoma Bar Ass'n v. Patterson,* 2001 OK 51, ¶ 29, 28 P.3d 551; *State ex rel. Oklahoma Bar Ass'n v. Eakin,* 1995 OK 106, ¶ 0, 914 P.2d 644; *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 16, 880 P.2d 339.

27. *State ex rel. Oklahoma Bar Ass'n v. Doris,* 1999 OK 94, ¶ 38, 991 P.2d 1015; *State ex rel. Oklahoma Bar Ass'n v. Rozin,* 1991 OK 132, ¶ 10, 824 P.2d 1127.

28. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 1997 OK 55, ¶ 15, 938 P.2d 744.

29. *State ex rel. Oklahoma Bar Ass'n v. Southern,* 2000 OK 88, ¶ 35, 15 P.3d 1; *State ex rel. Oklahoma Bar Ass'n v. Taylor* 2000 OK 35, ¶ 33, 4 P.3d 1242.

30. Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3–A, see note 2, supra.

31. *State ex rel. Oklahoma Bar Ass'n v. Rennie,* 1997 OK 108, ¶ 20, 945 P.2d 494; *State ex rel. Oklahoma Bar Ass'n v. Butler,* 1992 OK 150, ¶ 9, 848 P.2d 540.

32. *State ex rel. Oklahoma Bar Ass'n v. Rennie,* see note 31, supra; *State ex rel. Oklahoma Bar Ass'n v. Wilkins,* 1995 OK 59, ¶ 12, 898 P.2d 147.

33. Rule 6.16, Rules Governing Disciplinary Proceedings, see note 7, supra.

## CONCLUSION

¶ 26 The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[34] Discipline is appropriate because of the respondent's admitted violation of Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A.[35] The unprofessional conduct, to which the respondent admits, is not to be lightly disregarded. However, upon a *de novo* review of the facts presented, absent a prior disciplinary history or a showing of fraud, a six month suspension and the payment of costs is sufficient to meet the goals of attorney discipline—safeguarding the interests of the public, the courts and the legal profession[36] as well as acting as a deterrent to future misconduct.[37] Therefore, we determine that the respondent should be suspended for six months and pay costs of $3,456.33.

**RESPONDENT SUSPENDED; COSTS IMPOSED.**

HODGES, LAVENDER, HARGRAVE, KAUGER, SUMMERS, concur.

WATT, C.J., with whom BOUDREAU and WINCHESTER, JJ., join concurring in part and dissenting in part:

I would suspend the respondent from the practice of law for one year.

OPALA, V.C.J., dissents from that part of the opinion which exonerates respondent of *constructive fraud* and imposes much more lenient professional discipline than that recommended by the Bar.

**34.** *State ex rel. Oklahoma Bar Ass'n v. Holden,* see note 4, supra; *State ex rel. Oklahoma Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 8, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n,* 1981 OK 12, ¶ 4, 624 P.2d 1049.

**35.** Rule 1.8(c), Rules of Professional Conduct, 5 O.S.2001, Ch. 1, App. 3-A, see note 2, supra.

**36.** *State ex rel. Oklahoma Bar Ass'n v. Phillips,* see note 3 at ¶ 21, supra; *State ex rel. Oklahoma*

*Bar Ass'n v. Smith,* 1980 OK 126, ¶ 21, 615 P.2d 1014; *State ex rel. Oklahoma Bar Ass'n v. Lowe,* 1982 OK 20, ¶ 19, 640 P.2d 1361.

**37.** *State ex rel. Oklahoma Bar Ass'n v. Cummings,* 1993 OK 127, ¶ 19, 863 P.2d 1164; *State ex rel. Oklahoma Bar Ass'n v. Hall,* 1977 OK 117, ¶ 12, 567 P.2d 975.