Wyrick, J.,
dissenting:
¶ 1 During the course of his representation of an elderly client, Respondent Scott Robert Helton violated numerous rules of professional conduct, including Rules 1.1 (he was not competent), 1.3 (he was not diligent), 1.4 (he failed to adequately communicate), 1.8 (he had a conflict of interest), 1.15 (he did not safeguard his client’s money), and 8.4 (he engaged in professional misconduct). For these violations, the Bar Association recommends that Helton’s license be suspended for six months and he be forced to pay the costs of the investigation and prosecution of his misconduct. The majority is persuaded that a variety of mitigating circumstances counsel in favor of a lighter touch; it accordingly rejects the Bar Association’s recommendation in favor of the public reprimand preferred by the Professional Responsibility Tribunal. Respectfully, I am not so persuaded, *243 and would accept the Bar Association’s recommendation.
¶ 2 As a starting point, the Bar Association recognized that the case involved “tremendous” mitigating factors,[1] and thus formulated a recommendation that accounted for those factors. Heeding our admonition that we strive “to impose equal or uniform discipline in order to avoid the vice of disparate treatment given to those being disciplined,”[2] the Bar Association looked to the most analogous case it could find,[3] our 2003 decision in State ex rel. Oklahoma Bar Association v. McLain,[4] and recommended discipline equal to that imposed there. I find this approach reasonable and disagree with the majority’s decision to ascribe greater weight to the various mitigating factors in imposing significantly lighter discipline than that imposed in McLain.
¶3 First, the majority places weight on what they call Helton’s mere “technical” violations of the Rules. By this, they mean that there is no evidence that Helton intentionally violated the rules and intentionally took advantage of his elderly client. But the relevant Rules contain no mens rea requirements and make no distinction between intentional and mere “technical” violations. The Rules are either violated, or they are not. This is so because the goal of attorney discipline is not retribution for the rules violation, in which case intent would be more relevant,[5] but rather “safeguarding the interests of the public, the courts and the legal profession as well as acting as a deterrent to future misconduct.”[6] Because our goal is to impose discipline with an eye toward protecting the public from future violations, the fact that Helton committed his violations inadvertently rather than intentionally should be of little mitigating relevance. The intentional wrongdoer at least knows he is doing wrong and can choose to correct his course; the oblivious wrongdoer, on the other hand, enjoys the bliss of ignorance, unaware that any course correction is due. Appropriately so, a lack of mal-intent did not serve as. a barrier to a lengthy suspension in McLain,[7] and the majority provides no rationale for why it creates such a barrier here. As I see it, had Helton intentionally violated the rules to take advantage of his elderly client, there would likely be nine votes for disbarment. Thus, even if Helton’s lack of mal-intent is relevant and mitigating, that mitigation is adequately reflected in the Bar’s recommendation of a six-month suspension instead of disbarment.
¶ 4 The majority next places significant weight on the client’s satisfaction with Hel-ton’s services. While the lack of a complaining victim has some superficial appeal as a basis for mitigation, it again runs counter to the rationale undergirding lawyer discipline, which is to protect the public at large, and not necessarily the individual client in a particular case. That is why we recently disbarred an attorney who — at the request of *244 her client — smuggled a'cell phone into a jail.[8] That client was almost certainly pleased with the services rendered by his attorney, but no one on this Court found that fact remotely mitigating, and for good reason. That attorney’s conduct violated rules designed to protect the public, and her conduct demonstrated that her continued practice of law placed the public at danger of further harm, notwithstanding her client’s satisfaction with the services rendered, The same is no less true here.
¶ 5 The remaining “very unusual” circumstances relied on by the majority largely lack any mitigating qualities'.[9] Helton’s lack of prior disciplinary history certainly cuts in his favor, but the fact that he repaid his client the money he owed her and finally committed them agreements to writing after the Bar Association began to investigate him says nothing about the likelihood that he might repeat his mistakes in the future. Nor does the fact that he has a close familial relationship with this client tell us much about whether he might repeat his mistakes with a future client. If anything, it tells' us that Helton will need to be particularly vigilant in the future to ensure that the lines between client and Mend are not blurred as they were here.
¶ 6 I recognize that because of the judgment-laden nature of the task before us, reasonable minds will often reach different conclusions as to the discipline that is appropriate in any paxiicular case. Thus, I do not fault the majority for reaching a conclusion different from mine, But because I would accept the Bar Association’s recommendation, I must respectfully dissent.

. Professional Responsibility Tribunal Hearing Tr. Vol. II at 354 (May 11, 2016) [hereinafter PRTTr. II],

. State ex rel. Oklahoma Bar Ass’n v. Knight, 2015 OK 59, ¶ 33, 359 P.3d 1122, 1132.

. See PRT Tr. II at 362.

. 2003 OK 15, 65 P.3d 281.

. Cf. Enmund v. Florida, 458 U.S. 782, 800, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (explaining that retribution as a justification for punishment "very much depends on the [defendant’s] culpability — -what [the defendant’s] intentions, expectations, and actions were” and that "American criminal law has long considered a defendant's intention — and therefore his moral guilt — to be critical to the degree of his criminal culpability” (internal marks omitted)).

. McLain, 2003 OK 15, 26, 65 P.3d at 289; see also State ex rel. Oklahoma Bar Ass’n v. Boone, 2016 OK 13, 18, 367 P.3d 509, 515 ("In disciplinary proceedings, the responsibility of this Court is not to punish, but instead to inquire into and gauge a lawyer’s continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts, and of the legal profession.”); State ex rel. Oklahoma Bar Ass’n v. Layton, 2014 OK 21, 34, 324 P.3d 1244, 1259.

. See 2003 OK 15, 24-25, 65 P.3d at 288 (imposing a six-month suspension and assessing costs against attorney with no prior disciplinary record who committed a technical violation of Rule 1.8 when she had her client sign a will on her deathbed bequeathing property to the attorney’s mother and sister).

. State ex rel. Oklahoma Bar Ass'n v. Drummond, 2017 OK 24, 393 P.3d 207.

. See Majority Op. 239.